**LONE STAR HMA, L.P. d/b/a Woman's Hospital at Dallas Regional Medical Center f/k/a Mesquite Community Hospital, Appellant**

v.

**Tashja WHEELER, Individually, and Tashja Wheeler and Tony Evans, Sr., as Parents and Next Friends of T.E. Jr., A Minor, Appellees.**

No. 05–08–01348–CV.

Court of Appeals of Texas, Dallas.

July 28, 2009.

Ken Carroll, Rodney H. Lawson and Thomas F. Allen, Jr., Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, TX, for Appellant.

Joshua Davis, Jacquelyn C. Gregan, Haskins & Gregan, Houston, TX, for Appellant.

Before Justices MORRIS, RICHTER and LANG–MIERS.

## OPINION

Opinion By Justice RICHTER.

This is an interlocutory appeal of a trial court's motion to dismiss a healthcare lia-

bility claim. Appellant Lone Star HMA, L.P. d/b/a Woman's Hospital at Dallas Regional Medical Center f/k/a Mesquite Community Hospital (the "Hospital") challenges the trial court's denial of its motion to dismiss claims brought by appellees Tashja Wheeler, Individually, and Tashja Wheeler and Tony Evans, Sr., as Parents and Next Friends of T.E. Jr., a Minor (collectively, "Wheeler"). In two issues, the Hospital argues the trial court erred in denying its motion to dismiss because Wheeler's expert report was untimely and insufficient as a matter of law. Based on our review of the record and applicable law, we conclude Wheeler's expert report was not timely filed. We therefore reverse the trial court's order and remand the case with instructions for the trial court to award the Hospital its reasonable attorney's fees and costs of court and dismiss Wheeler's claims against the Hospital with prejudice.

## A. Background

On January 17, 2008, Wheeler filed an original petition against the Hospital, the treating physician and two nurses alleging negligence in connection with the delivery of T.E. The original petition identified the hospital as "Mesquite Community Hospital a/k/a Woman's Hospital at Dallas Regional Medical Center," and stated that Wheeler was suing all defendants "in their common or assumed names." Simultaneously with the filing of the original petition, Wheeler filed the expert report of Dr. Richard Stokes. The report, dated November 15, 2007, criticized the conduct of the treating physician, but did not assert a breach of care by the Hospital. The report was not served on the Hospital. Wheeler attempted service of the petition on February 5, 2008, but the individual she attempted to serve could not accept service on behalf of the Hospital.

Wheeler filed a first amended petition on February 21, 2008. The petition named the Hospital as "Mesquite Community Hospital a/k/a Women's Hospital at Dallas Regional Medical Center" and stated that the defendants were being sued in their common or assumed names. A new citation was issued and on March 7, 2008, service was attempted on CT Corporation, the Hospital's registered agent. CT Corporation refused to accept service, stating that it was not the registered agent for "Mesquite Community Hospital."

Wheeler filed a second amended petition on March 31, 2008, and identified the Hospital as "Mesquite Community Hospital a/k/a/ Lone Star HMA, L.P. d/b/a Women's Hospital at Dallas Regional Medical Center." Like the former petitions, the second amended petition stated that the defendants were being sued in their common or assumed names. The allegations in this petition also mirrored the claims in the former petitions. Specifically, Wheeler alleged that the treating physician used inappropriate obstetrical procedures during delivery which resulted in injury to T.E. Wheeler also asserted that the nurses failed to adequately monitor and assess the mother and baby during delivery, and failed to notify the treating physician about the baby's in utero position. Wheeler further alleged that the Hospital had been negligent in its development of policies and procedures regarding the diagnosis of decelerating fetal heart rates and in its training of the nurses and treating physician. A new citation was issued, and the Hospital was served through CT Corporation. The Hospital and the nurses filed an original answer on April 28, 2008. In its answer, the Hospital identified itself as "Lone Star HMA, L.P. d/b/a Woman's Hospital at Dallas Regional Medical Center f/k/a Mesquite Community Hospital."

On July 11, Wheeler filed and served the Hospital with a new expert report prepared by Dr. Stokes (the "Stokes Report"). The Stokes Report, dated May 15, 2008, asserted that the Hospital breached its standard of care by not discontinuing Pitocin (a hormone used in obstetrics to induce labor) after T.E.'s heart rate began to decelerate. On August 1, 2008, the Hospital filed a motion to dismiss Wheeler's claims. The Hospital argued that the Stokes Report was served on the Hospital more than 120 days after the original petition had been filed, contrary to the requirements of section 74.351(a) of the Texas Civil Practice and Remedies Code. In the alternative, the Hospital asserted that the Stokes Report was inadequate as a matter of law. Four days prior to the hearing, Wheeler filed a third amended petition which added a new negligence claim against the Hospital. The third amended petition alleged, among other things, that the Hospital had been negligent in failing to monitor and discontinue the administration of Pitocin during delivery. Following a hearing, the trial court denied the Hospital's motion to dismiss. This interlocutory appeal followed.

### B. Standard of Review

We review a trial court's ruling on a motion to dismiss a healthcare liability claim for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex.2006) (per curiam); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex.App.-Dallas 2007, pet. denied). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Biggs*, 237 S.W.3d at 916. To the extent resolution of this appeal requires interpretation of a statute, we review the ruling under a de novo standard. *Suleman v. Brewster*, 269 S.W.3d 297, 298 (Tex.App.-Dallas 2008, no pet.); *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

### C. Discussion

The Hospital contends that the trial court erred in denying its motion to dismiss because Wheeler's expert report was not timely served under TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp. 2008). Wheeler asserts that because of her difficulties in serving the Hospital, the 120–day deadline for serving an expert report was not triggered until the second amended petition was filed. Applying the plain language of Chapter 74 and prior decisions of this court, we are bound to agree with the Hospital.

Since the incident at issue occurred on November 7, 2005, Wheeler's claims are governed by the current provisions of Chapter 74 of the Texas Civil Practice and Remedies Code.[1] TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2008). Section 74.351(a) provides that an expert report must be served "not later than the 120th day after the date the *original* petition was filed" (emphasis added). *Id.* If the claimant does not serve a report within 120 days, the statute provides that the trial court "shall" enter an order granting the affected party's motion to dismiss the claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp. 2008); *Poland v. Grigore*, 249 S.W.3d 607, 614 (Tex.App.-Houston [1st Dist.] 2008, no pet.)

■ Because our resolution of this case requires interpretation of section 74.351 of the Texas Civil Practice and Remedies

1. The 2005 version of Section 74.351(a) is applicable to causes of action that accrued after September 1, 2005. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590.

Code, we begin our inquiry by reviewing the relevant principles of statutory construction. The primary goal of statutory construction is to ascertain and effectuate the legislature's intent. *Fitzgerald v. Advanced Spine Fixation Sys. Inc.*, 996 S.W.2d 864, 865–66 (Tex.1999). In doing so, we begin with the statute's plain language because we assume the legislature said what it meant, and thus, that its words are the surest guide to its intent. *Fitzgerald*, 996 S.W.2d at 865–66. Besides yielding an objective guidepost to the legislature's intent, reliance on statutory text "ensures that ordinary citizens are able to rely on the plain language ... to mean what it says." *Id.* at 866. In addition, we may consider, among other things, the circumstances under which the legislature enacted the statute, the legislative history, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005).

In reviewing the statute at issue, we note initially that the purpose behind Section 74.351(a)'s adoption, was, among other things, to "remove unwarranted delay and expense, to accelerate disposition of non-meritorious cases, and to give hard-and-fast deadlines for the serving of expert reports." *Campbell*, 222 S.W.3d at 797. Comparison of the prior version of Section 74.351 with the current version is also instructive to our analysis. In 2005, the legislature amended section 74.351 to make it even more stringent. The prior language of Section 74.351(a) defined the time period for serving an expert report period as "not later than the 120th day after the date the claim was filed...." *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590. But the 2005 amendment to the statute requires service of the expert report within 120 days from the date the "original petition was filed." *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590. The purpose of the 2005 amendment, which governs the disposition of this action, was to "clarify" that the deadline for serving expert reports is "triggered by the filing of the lawsuit." *See Methodist Charlton Med. Ctr. v. Steele*, 274 S.W.3d 47, 50 (Tex.App.-Dallas 2009, pet. filed) (quoting HOUSE COMM. ON CIV. PRAC. BILL ANALYSIS Tex. H.B. 2645, 79th Leg.R.S. (2005)). In *Methodist Charlton*, this court concluded that the failure to serve an expert report within 120 days of the filing of the original petition required dismissal of the claims even though the claims were added through an amended petition that was filed after the expiration of the 120–day period. *Id.* The court observed that although the 120–day deadline can lead to harsh results, it is consistent with the legislature's effort to "reduce excessive frequency ... of health care liability claims." *Id.*

■ Based on the legislative history and the plain language of the statute, we conclude that Section 74.351 clearly requires that the expert report be filed within 120 days of the filing of the original petition. *See Maxwell v. Seifert*, 237 S.W.3d 423, 426 (Tex. App.-Houston [14th Dist.] 2007, pet. denied) (holding that all expert reports, including those relevant to amended claims, must be served within 120 days of the date original petition is filed); *Bohannon v. Winston*, 238 S.W.3d 535, 538 (Tex.App.-Beaumont 2007, no pet.) (rejecting argument that physician could not invoke 120–day deadline because he caused delay of service of original petition). The statute makes no exception for the time it takes to effectuate service of the lawsuit, nor does it address failed attempts to serve a lawsuit. When no expert report has been filed, the only extension of the 120–day time period authorized

by the statute is an extension by agreement of the parties. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2008); *see also, PM Management Windcrest NC, LLC v. Sanchez,* 256 S.W.3d 396, 397 (Tex.App.-San Antonio 2008, no pet.) (statute clearly requires expert report within 120 days of filing date of original petition, so trial court had no discretion to grant extension of time). Here, Wheeler filed her original petition on January 17, 2008. Thus, the statutory deadline for serving an expert report was May 16, 2008. Although the report was dated May 15, 2008, Wheeler did not serve the report on the Hospital until July 11, 2008. Therefore, the report was not timely under Section 74.351.

■ Wheeler also argues that her misidentification of the Hospital delayed the starting date for the 120–day deadline until March 31, 2008, the date she filed her second amended petition. Specifically, she contends that because she misidentified the Hospital, there was no cause of action against the Hospital until it was properly named in a petition and served. But Wheeler provides no support for the application of common law doctrine to Section 74.351. In essence, Wheeler seeks to have this court engraft a judicial exception to an unambiguous statute. This court, however, has already declined a similar request. *See Offenbach v. Stockton,* 285 S.W.3d 517 (Tex.App.-Dallas 2009, pet. filed.) (declining to engraft a due diligence exception to the 120–day deadline under the 2003 version of the statute when it was not possible to serve the defendant). Although we may envision the potential for inequitable results or perceive inconsistencies in the statute, courts are not vested with the power to legislate, nor are they responsible for omissions in legislation. Instead, courts are responsible for a true and fair interpretation of the written law, and it

must be an interpretation which expresses only the will of the makers of the law, not forced or strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 860 (Tex.2005). Judicial judgment-awareness of the line between adjudication and legislation and refusing to cross it-means giving wide berth to legislative judgment. *Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 481 (Tex. 2009) (Willett, J., concurring). "It is certainly true that we do not lightly presume the legislature may have done a useless act, and will not read statutory language to be pointless if it is reasonably susceptible of another construction." *Brown v. De La Cruz,* 156 S.W.3d 560, 566 (Tex.2004). But both of these principles, as the Texas Supreme Court has observed, presume the possibility that the legislature might occasionally do such a thing. *Id.* "It is at least theoretically possible that legislators—like judges or anyone else—may make a mistake." *Id.* While we do not lightly presume such occurrences, we are bound to effectuate the language the legislature has chosen, and that language leaves no room for a construction other than the absolute requirement that an expert report be served within 120 days of the filing of the original petition. Unless and until the legislature instructs us otherwise, we must apply the statute as currently written. Because Wheeler failed to serve an expert report on the Hospital within 120 days of filing her original petition, the Stokes Report was not timely, and the trial court was required to dismiss Wheeler's claims with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp. 2008). The Hospital's first issue is sustained. Because we have concluded that the expert report was not timely, we need not reach the Hospital's remaining issue.

### D. Conclusion

We reverse the trial court's order denying the motion to dismiss. In accordance with Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b) (Vernon Supp.2008), we remand the case to the trial court with instructions to award the Hospital its attorney's fees and costs of court and dismiss Wheeler's claims against the Hospital with prejudice.