Daniel STROUD, M.D., Appellant,

v.

Jerry GRUBB, Individually and as Representative of the Estate of Lonnie Grubb, Deceased, Appellee.

No. 01–09–00945–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 13, 2010.

David J. McTaggart, Wayne Clawater, Cruse, Scott, Henderson & Allen, LLP, Scott Nichols, Strasburger & Price, LLP, Houston, TX, Donald S. Stephens, James B. Edwards, Edwards & Associates, Stafford, TX, for Appellant.

Andrew Todd McKinney IV, McKinney & Cooper, L.L.P., Spencer G. Markle, Vascoe, Valdes & Markle, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

JANE BLAND, Justice.

In this interlocutory appeal, we decide the proper deadline for filing an expert report corresponding to a defendant who is added to an existing lawsuit. Jerry Grubb, individually and as representative of the estate of Lonnie Grubb, sued Dr. Amilcar Avendano for wrongful death, negligence, and gross negligence. A year after filing the initial petition, Grubb filed an amended petition, naming Dr. Daniel Stroud as an additional defendant. In the trial court, Dr. Stroud moved to dismiss the case against him, contending that Grubb did not serve him with an expert report within 120 days after filing the "original" petition, although he concedes that Grubb did so within 120 days of having sued him. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp.2009). The trial court denied Stroud's motion to dismiss. We hold that amending a petition to name a defendant triggers the 120-day time period to serve that defendant with an expert report. We therefore affirm the order of the trial court.

## Background

In September 2007, the Houston Northwest Medical Center admitted Lonnie Grubb due to his complaints of chest pain. After Dr. Avendano performed a cardiac catheterization he consulted with Dr. Stroud to evaluate Grubb for cardiac surgery. Although Grubb had been taking aspirin and Plavix, two anti-coagulants, Avendano and Stroud recommended a triple coronary artery bypass grafting, which Stroud performed. Grubb experienced excessive bleeding both during and after the surgery, leading to the build-up of blood between the heart muscles and heart sac, which required a second surgery by Stroud the next day. Grubb's condition continued to deteriorate and he died of multisystem organ failure four days later.

Jerry Grubb, Lonnie's daughter and the representative of his estate, sued Dr. Avendano for negligence, gross negligence, and wrongful death on July 7, 2008, and she simultaneously served Avendano with the expert report of Dr. Paul Dlabel. On July 22, 2009, Grubb filed her fourth amended original petition which, for the first time, named Dr. Stroud as a defendant. The next day, Grubb served Stroud with the expert reports of Dr. Dlabel, Dr. Alexander Stein, and Nurse Thomas Locke.

Stroud moved to dismiss, contending that the expert reports were untimely because Grubb did not serve Stroud with them within 120 days of filing the initial original petition against Avendano. Grubb responded that the 120-day time period to serve Stroud with an expert report runs from the filing of the fourth amended petition, which was the first petition to name Stroud as a defendant and assert claims against him. The trial court denied Stroud's motion to dismiss, and Stroud filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon 2008) (allowing an interlocutory appeal when a district court "denies all or

part of the relief sought by a motion under section 74.351(b)").

## Discussion

*Standard of Review*

Ordinarily, we review a trial court's decision on a section 74.351 motion to dismiss for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003). When the facts are undisputed, as they are here, we owe no deference to the trial court's application of the law. The resolution of this appeal is limited to purely statutory interpretation, and thus we review the trial court's ruling de novo. *Torres v. Mem'l Hermann Hosp. Sys.,* 186 S.W.3d 43, 45 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 794 (Tex. App.-Houston [1st Dist.] 2007, no pet.).

*Timeliness of the Expert Report*

■■■ The trial court concluded that Grubb timely served Stroud with an expert report because the 120–day time period to serve a defendant does not run from just any original petition, but instead runs from the first original petition to name that defendant. We agree with the trial court. The primary purpose of construing a statute is to give effect to legislative intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). In determining this intent, we first look to the plain language of the statute, for "it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Id.* at 866. We also consider the object the Legislature sought to attain, the circumstances under which the Legislature enacted the statute, the legislative history, former statutory provisions, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023(1)-(5) (Vernon 2005); *see also id.* § 312.005 ("In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."). We presume that the Legislature intends for the entire statute to be effective and that its application yield a just and reasonable result. *Univ. of Tex. Health Sci. Ctr. v. Gutierrez,* 237 S.W.3d 869, 873 (Tex.App.-Houston [1st Dist.] 2007, pet. denied); TEX. GOV'T CODE ANN. § 311.021(2)-(3) (Vernon 2005). When determining legislative intent, we do not examine a term or provision in isolation, but we instead read the particular statute as a whole. *See State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *see also Gutierrez,* 237 S.W.3d at 873 ("Chapter 74, in its entirety, rather than provisions in isolation, must be considered, and meaning given to each provision consistent with all others.").

Section 74.351(a) of the Civil Practice and Remedies Code provides that:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2009). A "health care liability claim" is a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care ... which proximately results in injury to or death of a claimant...." *Id.* § 74.001(a)(13) (Vernon 2005). If the

plaintiff does not serve a defendant within 120 days of filing the original petition, the trial court shall dismiss the claim against the particular defendant with prejudice. *Id.* § 74.351(b) (Vernon Supp.2009).

Before 2005, section 74.351(a) required the plaintiff to serve the expert report within 120 days after filing a health care liability claim. *See* Act of June 11, 2003, 78 Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). The Texas Legislature amended this section, changing "claim" to "original petition," to "clarify the timing of when an expert report is due." *Methodist Charlton Med. Ctr. v. Steele,* 274 S.W.3d 47, 50 (Tex.App.-Dallas 2008, pet. denied). The Legislature rationalized the change as follows:

> Since the passage of House Bill 4 in the 78th Session, there has been some confusion regarding the timing of when an expert report is due on a medical malpractice case. Some have argued that the report is due 120 days from the date of the statutory notice letter, instead of 120 days from the date of the filing of the original petition. It was the intent of HB 4 that the report be triggered by the filing of the lawsuit.

House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2645, 79th Leg., R.S. (2005). In holding that filing the claim, and not serving the pre-suit notice letter, triggered the 120–day expert report time period, the Texas Supreme Court acknowledged the 2005 amendment and stated that "[it] see[s] *nothing in the slight change in the statute's language to indicate that a different meaning was intended* [by the change]." *Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex.2008).

The San Antonio Court of Appeals recently addressed the triggering date for expert reports when an amended petition names new defendants. *See Osonma v. Smith,* No. 04–08–00841–CV, 2009 WL 1900404, at *1–2 (Tex.App.-San Antonio July 1, 2009, pet. denied) (mem.op.). Our sister court held that filing the amended petition triggered the expert report requirement as to the newly named defendants, noting that section 74.351(a) "refers to the first-filed petition naming that defendant physician or health care provider as a party to the lawsuit." *Id.* at *2; *see also Padre Behavioral Health Sys., LLC v. Chaney,* 310 S.W.3d 78, 84 (Tex.App.-Corpus Christi 2010, no pet. h.) (adopting San Antonio court's reasoning in holding 120–day expert report window runs from amended petition first naming particular defendant).

In determining whether the Legislature intended to limit the expert report window to the 120 days after the first-filed petition, we must read the term "original petition" in the context of the remainder of the statute. *See Gonzalez,* 82 S.W.3d at 327. Section 74.351(a) prefaces the 120–day expert report requirement by stating "[i]n a health care liability claim." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a). The Legislature defined "health care liability claim" as a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care ... which proximately results in injury to or death of a claimant." *Id.* § 74.001(a)(13); *see also Mokkala v. Mead,* 178 S.W.3d 66, 71 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) ("A 'health care liability claim' is a 'cause of action,' not a lawsuit."). When reading section 74.351(a) as a whole, the expert report requirement is not triggered until the claimant files a cause of action naming a particular physician; it is only then that the defendant becomes a "party" to a suit involving a health care liability claim. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (noting that report must be served on a

"party" or a "party's attorney"). Here, although Grubb's fourth amended petition was not the first-filed original petition in the lawsuit, it was the first petition to assert a claim against Stroud, and thus was the original petition naming him as a party.

Stroud relies on three cases from our sister courts to support his contention that the 120–day time period runs from the first-filed original petition, regardless of whether that petition names the health care defendant for whom a report is required. In *Maxwell v. Seifert*, Maxwell asserted a negligence claim and did not serve an expert report within 120 days of filing her original petition. 237 S.W.3d 423, 425 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Instead, the day before the hearing on Seifert's motion to dismiss, Maxwell amended her petition to add two new liability claims for failure to disclose risks and res ipsa loquitur. *Id.* The Fourteenth Court of Appeals rejected Maxwell's contention that amending her petition to add new claims gave her an additional 120 days to serve Seifert with an expert report, reasoning that section 74.351(a) "clearly require[d]" an expert report within 120 days of the original petition. *Id.* at 426. The Dallas Court of Appeals reached the same conclusion in *Steele*. 274 S.W.3d at 50. The Dallas Court noted that section 74.351(a) "necessarily limits the time for a party to add claims without the possibility of dismissal for failing to serve an expert report to 120 days from filing the original petition." *Id.* In both *Maxwell* and *Steele*, the courts of appeals rejected an extension of the statutory deadline for parties already named in the lawsuit. This case is different: Grubb did not sue Stroud until she named him in the suit and made him a party to it. Only then did the statutory clock begin to run on her claim against Stroud.[1]

■ The Legislature adopted section 74.351(a) to "remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and to give hard-and-fast deadlines for the serving of expert reports." *Campbell*, 222 S.W.3d at 797. In enacting Chapter 74, the Legislature intended to "reduce excessive frequency and severity of health care liability claims, but … in a manner that will not unduly restrict a claimant's rights." *See Leland*, 257 S.W.3d at 208; *Hernandez v. Ebrom*, 289 S.W.3d 316, 321 (Tex.2009) ("[B]y requiring timely expert reports, the Legislature intended to reduce frivolous claims; it indicated no intent to preclude meritorious claims."). Adopting Stroud's interpretation of section 74.351(a) would have the practical effect of prohibiting a claimant from adding additional defendants more than 120 days after filing the initial petition, even if the statute of limitations has not otherwise expired. We decline to adopt this interpretation when a reasonable one exists: the 120 days runs from the first petition to assert a claim against the particular defendant for whom an ex-

---

1. We note that the Dallas Court of Appeals also has held that misidentification of a defendant and failed attempts to serve the defendant with citation do not extend the 120 day deadline. *Lone Star HMA, L.P. v. Wheeler*, 292 S.W.3d 812, 816 (Tex.App.-Dallas 2009, no pet. h.). Wheeler correctly identified the hospital in her second amended petition and successfully served it with citation two months after she filed the initial petition. *Id.* at 814. Wheeler served the hospital with an expert report within 120 days of serving the amended petition, but more than 120 days from filing the original petition. *Id.* at 815. The Dallas Court refused to apply the doctrine of misidentification to the service of an expert report, and held that section 74.351(a) "makes no exception for the time it takes to effectuate service of the lawsuit, nor does it address failed attempts to serve a lawsuit." *Id.* at 816. In contrast, here, Stroud was not named until the fourth amended petition.

566

pert report is required. The latter interpretation comports with the entire statutory language of section 74.351(a), does not lead to absurd results, does not unduly restrict the rights of the claimant, and preserves the "hard and fast" expert report deadline that the Legislature intended.

## Conclusion

We hold that the 120–day time period to serve a health care liability defendant with an expert report is triggered when the claimant first asserts a health care liability claim against that defendant in a petition. Because Grubb served Stroud with an expert report within 120 days of filing the amended petition in which she first asserted a health care liability claim against him, the trial court correctly denied Stroud's motion to dismiss. We therefore affirm the order of the trial court.