Opinion issued March 17, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00143-CV

———————————

Peter Lotze, M.D., Appellant

V.

Amanda
Howton and John Howton, Appellees



 



 

On Appeal from the 125th District Court

Harris County, Texas



Trial Court Case No. 2009-47341

 



 

MEMORANDUM OPINION

          The
issue in this interlocutory appeal is whether the trial court abused its
discretion by denying a motion to dismiss health-care-liability claims.  Appellant Peter Lotze, M.D. moved to dismiss
appellees Amanda Howton and John Howton’s medical-malpractice claims on the
ground that the Howtons filed a deficient expert report.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a), (l) (West Supp.
2010).  The trial court denied the motion
to dismiss.  We affirm.

I.                 
Background

          For
the purposes of reviewing the sufficiency of the challenged expert report, the
relevant facts as stated in the report are that Amanda suffered from
long-standing pelvic and urinary problems, including endometriosis that first
occurred when she was a teenager, causing pelvic pain.  After her third child was born, Amanda began
suffering from urinary incontinence.  Her
gynecologist implanted a prosthetic urethral sling, which relieved her stress
incontinence.  Unfortunately, the sling
caused multiple urinary‑tract infections that increased urinary frequency
and caused new bladder‑related pelvic pain.  Amanda was referred to urogynecologist
Dr. Peter Lotze to determine the cause of her new pain and urinary‑tract
infections.  Surgery resolved her pelvic
pain related to endometriosis.  But she
still suffered from recurring urinary‑tract infections and bladder pain.  Dr. Lotze recommended to Amanda
implanting a spinal neurostimulator, the Medtronic InterStim, to treat her
bladder‑related pain.  Although a
unilateral device was initially discussed with Amanda, Dr. Lotze implanted
bilateral Medtronic InterStim neurostimulator devices.

Afterwards, Dr. Lotze
conducted at least seven adjustments to the left InterStim device for various
reasons: it was not working; it shocked Amanda; it needed repositioning; and it
needed generator replacement.  The
urethral sling was eventually removed, which resolved Amanda’s recurring
urinary‑tract infections and bladder and pelvic pain.  Later, the left InterStim device was removed because
it was not working and was no longer necessary. 
Amanda developed severe and constant back pain on her left side
radiating from her spine, causing “foot drop” and sensory‑deficit
numbness in her left lower extremity.

The Howtons
filed suit against Dr. Lotze, Medtronic, Inc., and Stuart Ison, a
Medtronic representative, for fraud, negligence, and the unauthorized practice
of medicine.  The day after the Howtons
filed the original petition, they filed the original expert report and
curriculum vitae from Dr. J. Antonio Aldrete.  In the expert report submitted in support of
the Howtons’ claims, Dr. Aldrete opined that when the bilateral Medtronic
InterStim neurostimulator devices were implanted, “Dr. Lotze did not make
the association between the urethral sling and these recurrent infections at
this time, but instead focused on ‘interstitial cystitis’ or some other form of
noninfectious bladder hyperactivity.”  Dr. Aldrete
stated that his review indicated that the devices “seem to have been placed to
manage her recurrent bladder pain (which ultimately was found to be due to her
recurrent urinary tract infections from the sling).”  According to Dr. Aldrete, Dr. Lotze
failed to discuss with Amanda the possible side effect of nerve damage as a
risk of implanting the devices.  Dr. Aldrete
also stated that bilateral InterStim placement was not approved by the Food and
Drug Administration at the time of the surgery. 
He attributes Amanda’s back pain to damage to the sacral nerve roots,
which prevents her from walking significant distances, climbing stairs,
driving, and sitting for extended periods of time.  Dr. Aldrete concluded that Amanda
developed chronic inflammation in the spinal cord and arachnoiditis due to
“repeated instrumentation and manipulation of the InterStim devices” around her
nerve roots.

          Dr. Lotze
filed an objection to the expert report, challenging Dr. Aldrete’s
qualifications to render an expert report regarding urology, gynecology,
treatment of urine frequency problems, or treatment with the InterStim
device.  Dr. Lotze’s objection also
disagreed with the suggestion that it was improper to continue using the left
InterStim device.  Attached to Dr. Lotze’s
objection were exhibits, including portions of Amanda’s medical records.  Dr. Aldrete supplied a supplemental
report responding to the objection.  This
was followed by another objection from Dr. Lotze, which disagreed with Dr. Aldrete’s
report, in part based on the underlying medical records.  Dr. Aldrete prepared yet another supplemental
report in response, and Dr. Lotze again objected.

          Ultimately
Dr. Lotze filed a motion to dismiss the claims against him, contending Dr.
Aldrete’s expert report was based on factual mistakes in examining Amanda’s
medical records.  The motion to dismiss was
accompanied by 36 exhibits, which for the most part are Amanda’s medical
records.  The Howtons responded and
objected that the motion was “an attempt to cross‑examine Plaintiffs’
expert witness, rather than to properly challenge a preliminary witness
report.”  Dr. Lotze filed a reply in
which he reinterated his factual disagreement with the expert report by stating,
“Plaintiffs ignore the fact that Dr. Lotze’s argument is that Dr. Aldrete did
not understand the records he already had reviewed.”

          The
trial court denied the motion to dismiss, and this interlocutory appeal ensued.

II.              
Analysis

In two issues, Dr. Lotze argues
that the trial court erred in denying his motion to dismiss the Howtons’ health‑care‑liability
claims.  First, he contends that the expert
report failed to establish that as an anesthesiologist, Dr. Aldrete “is
familiar with the standards of a urogynecologist in the diagnosis or treatment
of complex urological conditions or is qualified to render such opinions.”  Dr. Lotze also complains that the expert
report is contradicted by Amanda’s medical records.

a.     Standard of review

Ordinarily, we review a trial court’s
decision on a section 74.351 motion to dismiss for abuse of discretion.  Am.
Transitional Care Ctrs., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001); Stroud v. Grubb, 328 S.W.3d 561, 563 (Tex.
App.—Houston [1st Dist.] 2010, pet. denied). 
The trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles.  Walker
v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003); Stroud, 328 S.W.3d at 563.  When
reviewing matters committed to the trial court’s discretion, we may not
substitute our own judgment for that of the trial court.  Bowie
Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).  A trial court does not abuse its discretion
merely because it decides a discretionary matter differently than an appellate
court would in a similar circumstance.  Gray v. CHCA Bayshore L.P., 189 S.W.3d
855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.); Harris Cnty. Hosp. Dist. v. Garrett, 232 S.W.3d 170, 176 (Tex. App.—Houston
[1st Dist.] 2007, no pet.).

b.    Expert qualifications

With regard to the required qualifications
of an expert witness on causation in a health‑care‑liability claim
against a physician, the witness must be a physician and must be “otherwise
qualified to render opinions on [causation] under the Texas Rules of
Evidence.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a) (West Supp.
2010).  On the issue of whether a
physician departed from accepted standards of medical care, a person may qualify
as an expert witness only if the person is a physician who:

(1)       is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim arose;   



(2)       has knowledge of accepted standards of medical care
for the diagnosis, care, or treatment of the illness, injury, or condition
involved in the claim; and     



(3)       is qualified on the basis of training or experience to
offer an expert opinion regarding those accepted standards of medical care. 

Id. § 74.401(a).  If a witness is to be qualified on the basis
of training or experience, “the court shall consider whether, at the time the
claim arose or at the time the testimony is given, the witness . . . is board
certified . . . and . . . is actively practicing medicine in rendering medical
care services relevant to the claim.  Id. § 74.401(c).

Dr. Lotze
argues that because Dr. Aldrete is an anesthesiologist, he has not satisfied the
requirement that he have knowledge of the accepted standards of care applicable
to urogynecologists.  In this argument, however,
Lotze focuses on Amanda’s underlying urological problems, i.e., urinary‑tract
infections, rather than the main allegation that Amanda suffered nerve damage
as a result of the negligent insertion of the InterStim devices and their
subsequent manipulation.

The expert
report sets out Dr. Aldrete’s basis for knowledge of the accepted standard of
care for the selection and implantation of the neurostimulator devices at issue
in this case:

The
implantation of a neurostimulator device and the proper selection of patients
for such implantation are performed within the medical community in commonality by anesthesiologists,
“urogynecologists” (an unrecognized speciality), orthopedic surgeons, neurosurgeons,
and other physicians who allegedly have specialized training in such
implantations.  The selection and
implementation of neurostimulators such as the Medtronic InterStim may involve
an anesthesiologist and/or a pain management specialist within anesthesiology
such as myself, but it oftentimes does not (it is performed by other medical
specialties if the individual physician
has proper training), and thus the selection and implementation of
neurostimulator[] devices within the medical community has an accepted standard
of care in commonality amongst the
physicians who perform such procedures. 
I have intimate and personal knowledge and experience with these
standards as I was performing spinal instrumentation, supervising the proper
selection of patient candidates for such procedures, supervising and preventing
perioperative complications, and participating as an attending physician in
spinal instrumentation at the time of the incidents at hand and beyond.

 

In his
supplemental expert report, Dr. Aldrete clarified his opinion that the permanent nerve damage
suffered by Amanda was the result of “repeated instrumentation and manipulation
of the InterStim devices around the nerve roots.”

An expert
witness need not be a specialist in the particular branch of the medical
profession for which the testimony is offered. 
Keo v. Vu, 76 S.W.3d 725, 732
(Tex. App.—Houston [1st Dist.] 2002, pet. denied).  The fact that Dr. Aldrete does not practice urogynecology
does not disqualify him from offering expert testimony regarding the alleged
negligent insertion of the InterStim devices and their subsequent
manipulation.  Accordingly,
we hold that the trial court acted within its discretion by accepting Dr. Aldrete as a qualified expert on
the issue of the standard of care.

c.      Sufficiency of expert report

A medical malpractice lawsuit such as the Howtons’ must be supported at the
early stages of litigation by an expert report served in accordance with the
Texas Medical Liability Act.  Because “traditional rules of
litigation are creating an ongoing crisis in the cost and availability of
medical care,” the Legislature has provided that “plaintiffs must support
health care claims with expert reports shortly after filing.”  In re
McAllen Med. Ctr., Inc., 275 S.W.3d 458, 461 (Tex. 2008); see Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.11(b), 2003
Tex. Gen. Laws 847, 884.  This requirement ensures “that only
meritorious lawsuits proceed by verifying, at the outset, that the plaintiff’s
allegations are medically well-founded.”  Spectrum
Healthcare Res., Inc. v. McDaniel, 306 S.W.3d 249, 250 (Tex. 2010) (citing Tex. Civ. Prac. & Rem. Code §
74.351(a); Palacios, 46 S.W.3d at 876–77).  The role of the trial court in this regard
has been described as a “gatekeeping” function akin to the admission of expert
opinion testimony.  Mettauer v. Noble, 326 S.W.3d 685, 691 (Tex. App.—Houston [1st
Dist.] 2010, no pet.); see also Daubert
v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795
(1993) (“under the [Federal] Rules [of Evidence] the trial judge must ensure
that any and all scientific testimony or evidence admitted is not only
relevant, but reliable”).

A plaintiff
bringing a health‑care‑liability claim must provide each defendant physician
or health care provider with an expert report.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  The substance of the required expert
report must provide “a fair summary of the expert’s opinions as of the date of
the report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm, or
damages claimed.”  Id. § 74.351(r)(6).

The
preliminary expert report fails to serve its purpose “only if it appears to the
court, after hearing, that the report does not represent an objective good
faith effort to comply with the definition of an expert report in
Subsection (r)(6).”  Id. § 74.351(l).  As
elaborated by the Texas Supreme Court in American Transitional Care
Centers., Inc. v. Palacios, in order to constitute a “good faith effort to
comply,” the expert report must provide enough information to fulfill two
purposes: “First, the report must inform the defendant of the specific conduct
the plaintiff has called into question. 
Second, and equally important, the report must provide a basis for the
trial court to conclude that the claims have merit.”  46 S.W.3d 873, 879 (Tex. 2001).  The only information relevant to this inquiry
is that found within the four corners of the report.  Id.
at 878.  The report need not marshal all
of the plaintiff’s proof, but it must include the expert’s opinion on each of
the elements identified in the statute.  Id.

Dr. Lotze
argues that because Dr. Aldrete’s report is “counterfactual” and “fact free,”
the trial court should have, in determining the sufficiency of Dr. Aldrete’s
expert report, considered the medical records Dr. Aldrete reviewed.  Dr. Lotze asks this Court to hold that “[w]hen
checking the specific medical facts cited by the expert . . . [a trial court
should be allowed to] look in the medical records cited by the expert” rather
than restrict its review to the four corners of the expert report and
curriculum vitae in determining the sufficiency of the expert report.  This legal contention was recently considered
and rejected by this Court.  See Mettauer, 326 S.W.3d at 691.  As applied in this case, the trial court’s
review was restricted to determsining whether Dr. Aldrete’s expert report
“represent[ed] a good-faith effort to comply with the definition of an expert
report,” that is, whether it informed Dr. Lotze of the specific conduct called
into question, provided a basis for the trial court to conclude that the Howtons’
claims have merit, and explained the basis of Dr. Aldrete’s statements to link
his conclusions to the facts.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(b), (l); Bowie, 79 S.W.3d at
52; Palacios, 46 S.W.3d at 878.  The report served both of those required
functions.  Accordingly, we hold that the
trial court did not err in declining to review Dr. Aldrete’s source
material in its review of the expert report.

Conclusion

          The trial
court did not abuse its discretion by accepting Dr. Aldrete as a qualified expert on the issue
of the standard of care or by concluding that his report was sufficient to
permit the Howtons’ health-care-liability claims to proceed.  We therefore overrule Dr. Lotze’s two
issues and affirm the trial
court’s order.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Chief Justice Radack and
Justices Massengale and Cox.*











*
          The
Honorable Lonnie Cox, judge of the 56th District Court of Galveston County,
Texas, participating by assignment.  See
Tex. Gov’t Code Ann.
§ 74.003(h) (West 2005).