CHCA WOMAN'S HOSPITAL, L.P. d/b/a The Woman's Hospital of Texas and Woman's Hospital of Texas, Inc., Appellants,

v.

Scott LIDJI and Angela Lidji, as next friends of R.L., A Minor, Appellees.

No. 01–11–00879–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 22, 2012.

Robert Eugene Bell, Serpe, Jones, Andrews, Callender & Bell, PLLC, Houston, TX, for Appellants.

Gaines West, Jennifer Driscoll Jasper, West, Webb, Allbritton & Gentry, P.C., College Station, TX, for Appellees.

Panel consists of Justices KEYES, BLAND, and SHARP.

## OPINION

EVELYN V. KEYES, Justice.

Appellees, Scott and Angela Lidji, as next friends of their minor daughter, R.L. ("Lidji"), sued CHCA Woman's Hospital, L.P. *d/b/a* The Woman's Hospital of Texas and Woman's Hospital of Texas, Inc. (collectively, "CHCA") for medical malpractice arising out of complications following R.L.'s birth. Lidji nonsuited his claims with four days remaining in the 120–day time period for serving expert reports. Over two years later, Lidji re-filed suit against CHCA and simultaneously served an expert report. CHCA moved to dismiss, contending that the report was untimely pursuant to Civil Practice and Remedies Code section 74.351. The trial court denied the motion to dismiss. On interlocutory appeal, CHCA contends that the tri-

al court erroneously denied its motion to dismiss because Lidji's nonsuit did not toll the 120–day time period, and, thus, the expert report, served more than two years after Lidji first filed an original petition against it, was untimely.

We *affirm*.

## Background

Twins R.L. and J.L. were born prematurely at CHCA on January 21, 2007, and they both spent time in the Neonatal Intensive Care Unit ("NICU"). Although J.L.'s development progressed normally while he was in the NICU, R.L. had numerous complications and ultimately suffered "permanent neurological damage and severe developmental impairment."

Lidji first filed a health care liability claim against CHCA on R.L.'s behalf on April 2, 2009. Lidji did not serve an expert report at this time. On July 27, 2009, 116 days after Lidji filed his original petition against CHCA, he nonsuited his claims. At this point in time, four days remained in the statutory 120–day time period for serving expert reports following the filing of Lidji's original petition, and Lidji had not yet served a report on CHCA.

More than two years later, on August 15, 2011, Lidji filed a health care liability claim against CHCA and several other medical practitioners.[1] Lidji simultaneously served CHCA with the expert report of Dr. Houchang D. Modanlou, a neonatologist.

CHCA objected to the expert report and moved to dismiss the claims against it.[2] CHCA argued that Lidji's expert report was untimely because Lidji did not serve the report until he filed the second suit against CHCA following his earlier nonsuit, more than two years after he initially filed an original petition against CHCA. CHCA argued that the statutory 120–day time period for serving an expert report began running on the day that Lidji first filed his original petition, April 2, 2009, and was not tolled when Lidji nonsuited his claims with four days remaining before the time period expired. Thus, CHCA argued, the 120–day time period expired on July 31, 2009, even though no lawsuit was pending against CHCA at the time. CHCA contended, "Plaintiffs' effort to re-file their healthcare liability claim against [CHCA] does not cure the lack of an expert report being served within 120–days of Plaintiffs' filing their original petition on April 2, 2009."

In response, Lidji argued that his nonsuit tolled the running of the 120–day time period until he re-filed suit against CHCA, which, instead of triggering a new 120–day window for serving an expert report, triggered the time remaining from his original 120–day time period: four days. Lidji argued that, considering the language in other sections of Chapter 74, it was clear that the Legislature intended for the 120–day

1. We note that there is not a statute of limitations issue in this case. Civil Practice and Remedies Code section 74.251(a) provides that "minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the [health care liability] claim," subject to section 74.251(b), which provides that "[a] claimant must bring a health care liability claim not later than 10 years after the date of the act or omission that gives rise to the claim." Tex. Civ. Prac. & Rem.Code Ann. § 74.251(a)(b) (Vernon 2011).

Lidji filed his second suit four-and-one-half years after R.L.'s birth, well within the limitations period.

2. The other defendants, Dr. William Scott Jarriel, Dr. Karen T. Deville, Dr. Brenda H. McIntyre, Dr. Deborah Selma Enad de Guzman, and Medical Center Neonatology Associates, P.A., did not join CHCA's motion. These defendants are not parties to this interlocutory appeal.

time period to run only when a lawsuit was actively pending. He contended that because he filed the second suit and simultaneously served the expert report on CHCA, he served the report on the day the expert-report time period resumed running following the nonsuit, and, thus, he timely served CHCA with the report.

The trial court ultimately overruled CHCA's objection to the expert report as untimely and denied CHCA's motion to dismiss. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp. 2011) (allowing interlocutory appeal from district court order that "denies all or part of the relief sought by a motion under [Civil Practice and Remedies Code] Section 74.351(b)").

## Standard of Review

 Generally, we review a trial court's ruling on a section 74.351(b) motion to dismiss for an abuse of discretion. *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 871 (Tex. App.-Houston [1st Dist.] 2007, pet. denied). Here, however, the question at issue— whether a nonsuit tolls the running of the 120–day expert report time period—is a question of law involving statutory interpretation. We review questions of law de novo. *Id.; see also Stroud v. Grubb*, 328 S.W.3d 561, 563 (Tex.App.-Houston [1st Dist.] 2010, pet. denied) ("The resolution of this appeal is limited to purely statutory interpretation, and thus we review the trial court's ruling de novo.").

The primary purpose of construing a statute is to determine and give effect to the Legislature's intent. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). When determining this intent, we look first to the plain language of the statute, for "it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald*, 996 S.W.2d at 866; *see also City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex.2008) ("[W]e construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.") (citations omitted). We may also consider the object the Legislature sought to attain, the circumstances under which the Legislature enacted the statute, the legislative history, former statutory provisions, and the consequences of a particular construction. *Tex. Gov't Code Ann.* § 311.023(1)(5) (Vernon 2005).

We presume that the Legislature intends for the entire statute to be effective and that its application yield a just and reasonable result. *Stroud*, 328 S.W.3d at 563; *Gutierrez*, 237 S.W.3d at 873; *see also* TEX. GOV'T CODE ANN. § 311.021(2)(3) (Vernon 2005). We read every word, phrase, and expression in a statute as if it were deliberately chosen and we likewise presume that words excluded from the statute are done so purposefully. *Town Hall Estates–Arlington, Inc. v. Cannon*, 331 S.W.3d 793, 795 (Tex.App.-Fort Worth 2010, no pet.). When determining legislative intent, we do not examine a term or provision in isolation, but we instead read the particular statute as a whole. *See State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002); *Stroud*, 328 S.W.3d at 563; *see also Gutierrez*, 237 S.W.3d at 873 ("Chapter 74, in its entirety, rather than provisions in isolation, must be considered, and meaning given to each provision consistent with all others.").

## Timeliness of Expert Report When Plaintiff Nonsuits

In its sole issue, CHCA contends that the trial court erred in denying its motion

to dismiss Lidji's claims against it because Lidji failed to timely serve an expert report. Specifically, CHCA contends that the trial court erroneously concluded that Lidji's nonsuit tolled the running of the statutory 120–day time period for serving expert reports until he re-filed his health care liability claims against CHCA.

■ Civil Practice and Remedies Code section 74.351(a) provides:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon 2011). A claimant may extend the 120–day period by written agreement of the affected parties. *Id.* If the claimant does not serve the expert report within the statutory time period, the trial court, on motion of the health care provider, shall "dismiss[ ] the claim ... with prejudice to the re-filing of the claim." *Id.* § 74.351(b). "The legislative purpose [of section 74.351] is to remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and to give hard and fast deadlines for the serving of expert reports." *Runcie v. Foley*, 274 S.W.3d 232, 234 (Tex.App.Houston [1st Dist.] 2008, no pet.).

■ Texas Rule of Civil Procedure 162 provides, "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." TEX.R. CIV. P. 162. A party has an "absolute right" to file a nonsuit. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A voluntary nonsuit "extinguishes a case or controversy from the moment the motion for nonsuit is filed or an oral motion is made in open court" and it "renders the merits of the nonsuited case moot." *Id.* (quoting *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex.2006) (per curiam) and citing *Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex.2008)). Section 74.351 does not address what effect, if any, a claimant's nonsuit has on the 120–day time period for serving expert reports, nor does it expressly allow for tolling of the 120–day time period.

The Fourteenth Court of Appeals addressed whether a claimant's nonsuit, taken after the 120–day period had already expired, restarts the expert report "clock" and entitles the claimant to a new 120–day time period in *Mokkala v. Mead. See* 178 S.W.3d 66, 69–70 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). In *Mokkala*, the claimants filed suit but did not serve their expert report within the 120–day time period. *Id.* at 68. The claimants nonsuited their claims and then filed the same claims against the same defendants in a different cause number. *Id.* The defendants moved to dismiss in the second suit on the ground that the expert report was not filed within 120 days after the claimants first filed their health care liability claims. *Id.* at 69–70. The trial court denied the defendants' motion. *Id.* at 68. On appeal, the claimants argued that their nonsuit placed them "in the same position they would have been [in] had they not brought the 2003 case, *i.e.*, the deadline for serving their expert report was 120 days from the date they filed the 2004 lawsuit." *Id.* at 70.

The Fourteenth Court held that "the 120–day period set forth in section 74.351(a) runs from the date the Meads filed the first petition asserting their health care liability claim, a period which,

in this case, had expired before the Meads nonsuited their claims against the health care providers." *Id.* at 68. The court reasoned that allowing a claimant to receive an entirely new 120–day time period for serving expert reports following a nonsuit "would not only be inconsistent with the plain language of the statute, but also with the circumstances under which the legislature enacted the statute, the object the legislature sought to obtain, and the legislative history of chapter 74. . . ." *Id.* at 74. The court noted that, in enacting section 74.351, the Legislature "removed the provisions [of former Article 4590i] permitting a nonsuit if an expert report was not filed 180 days after the plaintiff filed the claim." *Id.* at 75. In concluding that its interpretation of section 74.351 did not conflict with Texas Rule of Civil Procedure 162, which governs nonsuits, the court pointed out that "[t]he plaintiff controls when she files a petition alleging a health care liability claim, thereby triggering the commencement of the 120[day]-period within which she must serve the expert report. Subject only to the statute of limitations, a plaintiff can therefore wait to file a petition until she has obtained, and can serve, the expert report." *Id.* at 73. If a plaintiff were allowed to completely restart the expert report time period each time he filed a nonsuit and then subsequently refiled that same claim, this practice "could effectively expand the 120–day period to well over two years," which is "inconsistent with the policies, goals, and statutory provisions" of Chapter 74. *Id.* at 76; *see also Daughtery v. Schiessler,* 229 S.W.3d 773, 775 (Tex.App.-Eastland 2007, no pet.) ("If we were to hold as the plaintiffs suggest, medical malpractice claimants would be able to file a petition, take a nonsuit anytime prior to the health care provider's filing of a motion to dismiss, file another petition, take another nonsuit, etc. until the running of limitations. We do not believe the legislature intended such a result.").

In a footnote, the *Mokkala* court explicitly noted that "the 120–day period expired before the Meads nonsuited their claims against the health care providers." *Mokkala,* 178 S.W.3d at 68 n. 3. As a result, the court stated that it "need not decide whether filing of a nonsuit before the expiration of the 120–day period would toll the 120 days for the period that elapses between the filing of the nonsuit and the refiling of the same health care liability claim." *Id.*

Since *Mokkala,* several intermediate courts of appeals, including this one, have addressed the effect of a nonsuit on the 120–day time period when the claimant nonsuited *before* the expiration of the 120–day period. *See Estate of Allen ex rel. Allen v. Scott & White Clinic,* No. 03–08–00576–CV, 2011 WL 2993259, at *3–5 (Tex. App.-Austin July 22, 2011, no pet.) (mem. op.); *Cannon,* 331 S.W.3d at 794; *White v. Baylor All Saints Med. Ctr.,* No. 07–08–0023–CV, 2009 WL 1361612, at *1–2 (Tex. App.-Amarillo May 13, 2009, pet. denied) (mem. op.); *Runcie,* 274 S.W.3d at 235–36. In each of these cases, the courts relied on *Mokkala* and concluded that, even when the claimant nonsuits before the expiration of the 120–day period, the claimant's subsequent re-filing of the claim does not "restart" the time period and does not entitle the claimant to a new 120–day period. *See Allen,* 2011 WL 2993259, at *5; *Cannon,* 331 S.W.3d at 796; *White,* 2009 WL 1361612, at *1–2; *Runcie,* 274 S.W.3d at 236.

In all of these cases, the total time period in which a health care liability claim was pending before service of an expert report—combining the pendency of the first suit and the second suit following the

nonsuit—exceeded 120 days.[3] For example, in *Runcie*, the claimant filed suit, nonsuited his claim on the 96th day after he filed his original petition, re-filed his claim over a year later, and served his expert report 93 days after he filed the second suit. *See* 274 S.W.3d at 236. Thus, a health care liability claim was pending for a total of 189 days before the claimant served an expert report. *See id.* (noting that claimant "seeks to completely re-start the 120–day period"). We concluded that the claimant did not timely serve his expert report. *See id.; see also Allen*, 2011 WL 2993259, at *2 (nonsuit taken on day 118, claimant re-filed suit four months later, expert report served four days after re-filing; thus, claim pending for 122 days before service); *Cannon*, 331 S.W.3d at 794 (nonsuit taken on day 118, claimant re-filed suit five months later, expert report served twelve days after re-filing; claim pending for 130 days before service).

This case is factually distinguishable. Lidji nonsuited his original claim against CHCA on the 116th day after he filed his original petition. At this point, four days remained in the 120–day time period. More than two years later, and still within the applicable statute of limitations, Lidji re-filed his claim against CHCA and simultaneously served the expert report of Dr. Houchang D. Modanlou. Thus, the total time in which a health care liability claim was actively pending against CHCA before the service of an expert report—considering both the pendency of Lidji's first suit and Lidji's second suit following the nonsuit—equaled 117 days.

Although CHCA is correct that section 74.351(a) does not take into account the effect of a nonsuit, we note that the Texas Supreme Court has held, in the default judgment context, that the defendant's failure to appear after proper service of citation tolled the 120–day time period for serving an expert report until the defendant made an appearance. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex.2008) (per curiam). Thus, the supreme court has recognized that the expert report deadline may, under some circumstances, be tolled, even though the statute is silent regarding tolling. *See id.*

CHCA's interpretation of section 74.351—that the statute does not allow for tolling at all—would essentially limit a claimant's ability to nonsuit and re-file his claims to the first 120 days following the filing of his original petition. The language of section 74.351 does not limit the claimant's "absolute right" to a nonsuit in such a manner. *See Travelers Ins. Co.*, 315 S.W.3d at 862 (stating that plaintiff has "absolute right" to file nonsuit).

If a claimant is allowed the unfettered ability to nonsuit a health care liability claim, he would essentially be able to continuously file suit, nonsuit just before the 120–day time period expired, and re-file suit up until the running of limitations, which thwarts the Legislature's intent in creating the expert report deadline: "to remove unwarranted delay and expense, to

---

**3.** In *White v. Baylor All Saints Medical Center*, the Amarillo Court of Appeals did not include in its opinion the relevant filing, nonsuit, re-filing, or service of the expert report dates. The opinion merely stated:

> White had sued Baylor and then moved to non-suit that action before tendering an expert's report. A like suit was initiated several months later against the same defendant and involving the same actors. Within days of initiating the second proceeding, White served her expert's report upon Baylor. No one disputes that the date upon which the report was eventually served exceeded 120 days from the date White commenced the first action against Baylor.

*White v. Baylor All Saints Med. Ctr.*, No. 07–08–0023–CV, 2009 WL 1361612, at *1 (Tex. App.-Amarillo May 13, 2009, pet. denied).

accelerate the disposition of non-meritorious cases, and to give hard and fast deadlines for the serving of expert reports." *Runcie*, 274 S.W.3d at 234; *see also Daughtery*, 229 S.W.3d at 775 (noting that, if claimant's nonsuit after expiration of 120–day period could "restart" time period, claimant "would be able to file a petition, take a nonsuit anytime prior to the health care provider's filing of a motion to dismiss, file another petition, take another nonsuit, etc. until the running of limitations"). *Mokkala* and its progeny, however, amply safeguard the Legislature's intent. The *Mokkala* court expressly held that re-filing a health care liability claim after an earlier nonsuit does not "restart the 120–day period" and does not provide the claimant with an additional 120 days in which to serve his expert report. 178 S.W.3d at 73; *see also Cannon*, 331 S.W.3d at 796 ("We hold that a claimant who nonsuits healthcare liability claims asserted against a particular healthcare provider and subsequently refiles the same healthcare liability claims against the same healthcare provider does not restart the 120–day time period for the service of an expert report and a curriculum vitae on that healthcare provider."); *Runcie*, 274 S.W.3d at 236 ("Here, appellant seeks to completely re-start the 120–day period. Thus, the holding in *Mokkala*, that 'refiling a previously nonsuited health care liability claim fails to restart the 120–day period,' is squarely applicable.").

Lidji does not argue that upon re-filing his claims against CHCA following his earlier nonsuit he was entitled to a new 120–day time period for serving CHCA with an expert report. Instead, he contends that his earlier nonsuit essentially stopped the expert report "clock" at the date of the nonsuit, and, upon re-filing his health care liability claim, he was entitled solely to the remaining time left in the 120–day period to serve his report on CHCA. Thus, he

contends that, because he nonsuited his first claim on the 116th day after filing his original petition, when he re-filed his claim he had to serve CHCA with his expert report within four days of re-filing.

We agree with Lidji's interpretation of section 74.351. Such a construction protects both the claimant's right to nonsuit and reduces abuse of the right to nonsuit. This interpretation also ensures that the claimant receives the full 120 days, to which he is statutorily entitled, to serve an expert report.

Adopting CHCA's construction of section 74.351 creates the potential situation where the 120–day period will expire when there is no health care liability claim currently pending. Given the Legislature's specific requirement that a claimant serve an expert report "on each *party* or the *party's* attorney," the possibility of requiring the claimant to serve an expert report when no lawsuit is pending to avoid dismissal of his claim is an absurd result. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (emphasis added); *compare id.* (requiring service of expert report on party or party's attorney), *with id.* § 74.051(a) (Vernon 2011) (requiring claimant to provide pre-suit notice of claim to "each physician or health care provider against whom such claim is being made"); *see also Carroll v. Humsi*, 342 S.W.3d 693, 698 (Tex. App.-Austin 2011, no pet.) ("Carroll is correct in observing that section 74.351, subsection (a), contemplates that a claimant cannot satisfy the expert-report requirement as to a physician or health care provider unless and until the physician or provider is also made a party...."); *Poland v. Ott*, 278 S.W.3d 39, 48 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) ("[S]ection 74.351(a) speaks in terms of service [of the expert report] on a *party* or the *party's* attorney, and it uses the term 'defendant' for the physicians and health-

care providers whom the expert report implicates. One is not a 'party' or a 'defendant' until a claim is asserted against one in a suit.") (emphasis in original).

We conclude that the claimant's nonsuit, filed prior to the expiration of section 74.351's 120–day time period for serving expert reports, tolls the running of the 120–day period until the claimant re-files his claims, at which point the claimant has the time remaining from the 120–day period to serve the defendant with his expert report. Because Lidji, who nonsuited on the 116th day after he filed his original petition and had four days remaining in the 120–day time period, simultaneously served CHCA with an expert report upon re-filing his health care liability claim, we hold that Lidji timely served his expert report and that the trial court correctly denied CHCA's motion to dismiss.

We overrule CHCA's sole issue.

## Conclusion

We affirm the judgment of the trial court.