ACCEPTED
13-15-00063-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/29/2015 3:24:04 PM
DORIAN RAMIREZ
CLERK

No. 13-15-00063-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT - AT CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/29/2015 3:24:04 PM
DORIAN E. RAMIREZ
Clerk

MATHEW ALEXANDER, INDIVIDUALLY AND AS PRESIDENT OF
THE SOUTH TEXAS BRAIN AND SPINE CENTER,
*Defendant-Appellant,*
*v.*
PEDRO LOMAS,
*Plaintiff-Appellee.*

ON APPEAL FROM COUNTY COURT AT LAW NO. 3, NUECES COUNTY, TEXAS
CAUSE NO. 2012-CCV-61204-3
(HON. DEEANNE GALVAN)

## PLAINTIFF-APPELLEE'S BRIEF

HILLIARD MUÑOZ GONZALES LLP
Robert C. Hilliard
State Bar No. 09677700
bobh@hmglawfirm.com
Catherine D. Tobin
State Bar No. 24013642
catherine@hmglawfirm.com
John B. Martinez
State Bar No. 24010212
john@hmglawfirm.com
T. Christopher Pinedo
State Bar No. 00788935
cpinedo@hmglawfirm.com
Marion Reilly
State Bar No. 24079195
marion@hmglawfirm.com
719 S. Shoreline Boulevard, Suite 500
Corpus Christi, TX  78401
Telephone No.:  (361) 882-1612
Facsimile No.:   (361) 882-3015
**ATTORNEYS FOR PLAINTIFF-APPELLEE**

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT - AT CORPUS CHRISTI, TEXAS

MATHEW ALEXANDER, INDIVIDUALLY AND AS PRESIDENT OF
THE SOUTH TEXAS BRAIN AND SPINE CENTER,
*Defendant-Appellant,*

*v.*

PEDRO LOMAS,
*Plaintiff-Appellee.*

ON APPEAL FROM COUNTY COURT AT LAW NO. 3, NUECES COUNTY, TEXAS
CAUSE NO. 2012-CCV-61204-3
(HON. DEEANNE GALVAN)

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves clear facts and well-settled law. Together, they amply support the trial court's denial of Defendant-Appellant's second motion to dismiss. As a result, Plaintiff-Appellee believes that oral argument is not necessary to aid the decisional process or to expeditiously resolve this case. However, should the Court wish to hear oral argument, then Plaintiff-Appellee would welcome the opportunity to further articulate these issues.

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... iii

INDEX OF AUTHORITIES ............................................................................. v

STATEMENT OF THE CASE .......................................................................... viii

ISSUES PRESENTED........................................................................................ ix

STATEMENT OF THE FACTS ........................................................................ 1

STANDARDS OF REVIEW ............................................................................. 6

    I.    THE TRIAL COURT'S DENIAL OF DEFENDANT-APPELLANT'S SECOND MOTION TO DISMISS IS REVIEWED FOR AN ABUSE OF DISCRETION ...................................................................... 6

    II.    THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE REVIEWED FOR FACTUAL AND LEGAL SUFFICIENCY OF THE EVIDENCE ................................................................. 7

SUMMARY OF THE ARGUMENT ................................................................ 8

ARGUMENT ...................................................................................................... 9

    I.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S SECOND MOTION TO DISMISS ................................................................................. 9

        A.    Plaintiff-Appellee Timely Served an Expert Report on Defendant-Appellant Mathew Alexander within 120 Days of Filing His Amended Pleading Naming Defendant-Appellant Mathew Alexander as a Party ........................................ 10

            1.    *The 120-day deadline to serve an expert report runs from the date that the Plaintiff first asserted a health care liability claim against the Defendant* ........................................ 10

            2.    *Zanchi v. Lane, 408 S.W.3d 373 (Tex. 2013) is inapposite and, if anything, supports Plaintiff-Appellee's argument* .............. 13

3. *The common law concept of misnomer does not apply* ................... 14

B. Plaintiff-Appellee's Service of His Expert Report was Timely Even Assuming the 120-Day Deadline was Triggered by the Filing of Plaintiff's Original Petition ............... 17

II. THE EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ........................................................ 20

CONCLUSION ....................................................................................... 22

RULE 9.4(I) CERTIFICATION ................................................................ 23

CERTIFICATE OF SERVICE ................................................................... 23

# INDEX OF AUTHORITIES

**PAGE**

**UNITED STATES SUPREME COURT CASES:**

*Anderson v. City of Bessemar,*
  470 U.S. 546 (1985) ................................................................................ 6

**SUPREME COURT OF TEXAS CASES:**

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,*
  46 S.W.3d 873 (Tex. 2001) .................................................................... 6

*BMC Software Belgium, N.V. v. Marchland,*
  82 S.W.3d 789 (Tex. 2001) .................................................................... 7

*City of San Antonio v. Rodriguez,*
  828 S.W.2d 417 (Tex. 1992) ................................................................ 15

*In re Greater Houston Orthopaedic Specialists, Inc.,*
  295 S.W.3d 323 (Tex. 2009) ......................................................... 15, 16

*Jaffe Aircraft Corp. v. Carr,*
  867 S.W.2d 27 (Tex. 1993) .................................................................... 7

*Ogletree v. Matthews,*
  262 S.W.3d 316 (Tex. 2007) ................................................................ 19

*Shah v. Moss,*
  67 S.W.3d 836 (Tex. 2001) .................................................................. 19

*Stockton v. Offenbach,*
  336 S.W.3d 610 (Tex. 2011) ........................................................... 18, 19

*Tenet Hospitals Limited v. Rivera,*
  445 S.W.3d 698 (Tex. 2014) ................................................................ 18

*Walker v. Packer,*
  827 S.W.2d 833 (Tex. 1992) .................................................................. 7

*Worford v. Stamper*,
 801 S.W.2d 108 (Tex. 1990) ...................................................................... 6

*Yancy v. United Surgical Partners Int'l, Inc.*,
 236 S.W.3d 778 (Tex. 2007) ..................................................................... 19

*Zanchi v. Lane*,
 408 S.W.3d 373 (Tex. 2013) .............................................................. 13, 14

*Cf. Mark v. St. Luke's Episcopal Hosp.*,
 52 Tex. Sup. J 1194 2009 Tex. LEXIS 636 at *12 (Tex. Aug. 28 2009)............ 12

## TEXAS COURTS OF APPEALS CASES:

*Buchinal v. PJ Trailers-Seminole Mgmt. Co.*,
 372 S.W.3d 200 (Tex. App.—Texarkana 2012, no pet.)...................................... 15

*Cameron Cnty Drainage Dist. No. 5 v. Gonzales*,
 69 S.W.3d 820 (Tex. App.—Corpus Christi 2002, no pet.) ................................... 7

*Daybreak Comm. Servs., Inc. v. Cartrite*,
 320 S.W.3d 865 (Tex. App.—Amarillo 2010, no pet.) .................... 10, 14, 16, 17

*Hayes v. Carroll*,
 314 S.W.3d 494 (Tex. App.—Austin 2010, pet. aff'd) .......................... 10, 11, 14

*Kingswood Specialty Hosp., Ltd. v. Barley*,
 328 S.W.3d 611 (Tex. App.—Houston [14th Dist.] 2010, pet. aff'd) ........ 10, 14

*Lone Star HMA, L.P. v. Wheeler*,
 292 S.W.3d 812 (Tex. App.—Dallas 2009, no pet.) ...................................... 16, 17

*Manzi v. State*,
 88 S.W.3d 240 (Tex. Crim. App. 2002) (en banc) ................................................ 6

*McAllen Police Officers Union v. Tamez*,
 81 S.W.3d 401 (Tex. App.—Corpus Christi 2002, pet. dism'd) ........................... 7

*McQuade v. Berry*,
No. 02-12-00099-CV, 2012 WL 6049012 (Tex. App.—Fort Worth 2012, no pet.) ................................................................................................ 6

*Nexion Health at Beechnut, Inc. v. Paul*,
335 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2011, no pet.) .................. 19

*Osonma v. Smith*,
No. 04-08-00841-CV, 2009 WL 1900404 (Tex. App.—San Antonio July 1, 2009, pet. denied) (mem. op.) .............................................. 10, 11, 12

*Padre Behavioral Hlth Sys., LLC v. Chaney*,
310 S.W.3d 78 (Tex. App.—Corpus Christi 2010, no pet.) ................... 10, 11, 14

*Pallares v. Magic Valley Elec. Coop.*,
267 S.W.3d 67 (Tex. App.—Corpus Christi 2008, pet. denied) .......................... 7

*Puri v. Mansukhani*,
973 S.W.2d 701 (Tex. App.—Houston [14th Dist.] 1998) ........................... 20, 21

*Schindler v. Schindler*,
119 S.W.3d 923 (Tex. App.—Dallas 2003, pet. denied) ...................................... 21

*Stroud v. Grubb*,
328 S.W.3d 561 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).10,14,16,17

*Union Pacific Corp. v. Legg*,
49 S.W.3d 72, 78 (Tex. App.-Austin 2001, no pet.) ............................................. 16


**STATUTES AND RULES:**

Act of May 24, 2013, 83rd Leg., ch. 870 (H.B. 658), § 2, eff. Sept. 1, 2013 ............. 9, 13

Tex. Civ. Prac. & Rem. Code § 74.351(a) (Vernon 2011) ............................... 9, 10, 11, 18

Tex. Civ. Prac. & Rem. Code § 74.351(b) (Vernon 2011) ................................................. 9

Tex. R. Civ. Prac. 21a .................................................................................................... 18, 20

## STATEMENT OF THE CASE

*Nature of the Case*:

This is an interlocutory appeal challenging the trial court's denial of Defendant-Appellant's motion to dismiss in a medical malpractice case. The principal issue in this case is whether the trial court properly determined that Defendant-Appellant was not a named party to Plaintiff's Original Petition and thus that the 120-day clock did not begin to tick until Plaintiff-Appellee filed his First Amended Petition.

*Trial Court*:

County Court at Law No. 3, Nueces County, Texas, Judge Deeanne Galvan presiding.

*Trial Court Disposition*:

The trial court determined that Plaintiff-Appellee timely served a sufficient Chapter 74 expert report within 120-days of filing his Amended Petition. (Supp. CR 18.) Thus, the trial court denied Defendant-Appellant's operative motion to dismiss. (CR 401.)

## ISSUES PRESENTED

Plaintiff-Appellee disagrees with the issues presented by Defendant-Appellant in its opening brief. This case involves two relatively simple issues:

I. Whether the trial court properly denied Defendant-Appellant's second motion to dismiss after Plaintiff-Appellee served his expert's report within 120 days of filing his Amended Petition wherein Defendant-Appellant was named as a party to suit *for the first time*; and

II. Whether the trial court's Findings of Fact numbers 3, 4, 5 and 8 and Conclusion of Law number 18 are legally and factually sufficient.

## STATEMENT OF THE FACTS

*Mr. Lomas' Surgeries*

On June 25, 2010, Mr. Pedro Lomas underwent back surgery with Dr. Konasiewicz to repair damage caused by bulging, extruding, and desiccating discs in his spine and to correct moderately severe spinal stenosis and compression displacement.  (CR 29.)  Immediately after the operation, Mr. Lomas experienced intense pain in his lower back, leg, and foot.  (CR 29.)  Dr. Konasiewicz dismissed Mr. Lomas' pain as "typical" post-operative pain and assured him it would soon disappear.  (CR 29.)  The pain, however, only worsened.  (CR 29.)

In each of his post-operative follow-up appointments, Mr. Lomas described numbness in his leg and sharp, excruciating pain in his foot.  (CR 29.)  The pain was so intense that Mr. Lomas could not sleep, work, or walk without using a walker.  (CR 29.)  When Mr. Lomas, through tears, explained the depth of his pain to Dr. Konasiewicz, the doctor slapped him on his back and joked, "Well, but your *back* isn't hurting anymore, is it?"  (CR 29.)

Mr. Lomas later discovered that Dr. Konasiewicz severed one or more of Mr. Lomas' nerves during surgery, resulting in Mr. Lomas' constant pain, his inability to perform even the most routine activities, and his inability to walk without using a cane or crutches.  (CR 30.)  As a result of the botched surgery, Mr. Lomas is permanently disabled and unable to return to work in the oil field.  (CR 30.)  Mr. Lomas is a victim

1

not only of Dr. Konasiewicz's bad surgical technique, but also of Dr. Konasiewicz's failure to either acknowledge or to appreciate Mr. Lomas' post-surgical complaints and to act on them accordingly. (CR 30.)

Little did Mr. Lomas know, Dr. Konasiewicz had a long history of medical malpractice. (CR 36.) Dr. Konasiewicz managed to attain a special infamy in Minnesota, and a simple internet search uncovers numerous articles dealing with the extent of his history of malpractice. *See, e.g.,* J.G. Preston, "You've Paid $3 Million to Settle Malpractice Suits? Welcome to Texas, Podnah!", http://www.protectconsumerjustice.org/youve-paid-3-million-to-settle-malpractice-suits-welcome-to-texas-podnah.html (last accessed April 17, 2015) (discussing how the brain surgeon has been sued for medical malpractice nine times and was involved in cases that have already led to more than $3 million in settlements to injured patients). In fact, as Plaintiff-Appellee alleges in his First Amended Petition, "Dr. Konasiewicz only practices in Corpus Christi to evade a reprimand from the Minnesota Board of Medical Practice, after a career at St. Luke's Hospital in Duluth that left in its wake six patients seriously injured, two patients dead, and one patient paralyzed from the neck down." (CR 31.) Dr. Konasiewicz's surgical recklessness, coupled with his complete dismissal of patients' complaints or concerns after their surgeries, results in more serious damage to the patients than their original conditions would have caused. (CR 31.) Simply stated, Dr. Konasiewicz routinely leaves patients in worse condition than before he operated. (CR 31.)

Dr. Konasiewicz's past history was readily available when Dr. Mathew Alexander decided, together with his partner, to take on Dr. Konasiewicz as a partner at the South Texas Brain and Spine Center. (CR 31.) Either Dr. Alexander was aware of Dr. Konasiewicz's sordid history and hired him despite its existence, or he failed to perform even the most rudimentary examination of Dr. Konasiewicz's past before entrusting the health of patients to him. (CR 31.) In either event, Dr. Alexander and South Texas Brain and Spine represented Dr. Konasiewicz to their patients as a competent and safe doctor, and made no effort to inform them of his long history of medical malpractice. (CR 31.)

### Mr. Lomas' Lawsuit

On June 19, 2012, Mr. Lomas filed his Original Petition and Requests for Disclosure. (CR 7.) In this Original Petition, Mr. Lomas did not name Dr. Mathew Alexander, Individually and as President of South Texas Brain and Spine Center ("Defendant-Appellant") as a party to the suit. Plaintiff-Appellee did not assert a cause of action against Dr. Mathew Alexander in his Original Petition nor did Plaintiff-Appellee list Dr. Mathew Alexander as a defendant in the style of the case of his Original Petition. (CR 7.) Mr. Lomas amended his petition on June 27, 2012. (CR 27.) His First Amended Petition alleged, for the first time, facts and causes of action against Dr. Mathew Alexander and listed him as a defendant in the style of the case. (CR 27.) Dr. Mathew Alexander was never served with the Original Petition, only with the First Amended Petition where he was named as a party. (CR 7.) The

3

trial court determined that "June 27, 2012 was the first time Plaintiff sued and brought a cause of action against Defendant Mathew Alexander." (Supp. CR 17.)

*Mr. Lomas' Service of His Expert's Report*

The trial court determined that pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code, Plaintiff-Appellee had 120 days from June 27, 2012 to serve Dr. Mathew Alexander with an expert report; 120 days from June 27, 2012 was October 25, 2012. (Supp. CR 17.) Mr. Lomas timely served his expert's report, a report by Dr. Martin Barash, on Defendant Dr. Mathew Alexander, via facsimile on October 17, 2012, at approximately 6:28 p.m. (Supp. CR 18.) The trial court found that "Plaintiff had until October 25, 2012 to serve an expert report on Defendant Dr. Mathew Alexander, and his service of his expert report via facsimile on October 17, 2012, was therefore timely." (Supp. CR 18.)

On October 31, 2012, Dr. Mathew Alexander filed his motion to dismiss, alleging that Plaintiff-Appellee's Chapter 74 expert report was legally insufficient. (CR 64-129.) Plaintiff-Appellee filed a response on January 10, 2013. (CR 188.) Dr. Mathew Alexander served his second motion to dismiss on November 28, 2012, addressing the timeliness of Plaintiff-Appellee's Chapter 74 expert report. (CR 149-182.) Plaintiff-Appellee filed a response on May 9, 2013, arguing that nothing contained in section 74.451(a)'s 120-day deadline required him to serve an expert report on Dr. Mathew Alexander before he made him a party to the suit. (CR 204.)

4

The trial court conducted two hearings on the motions to dismiss—one on July 17, 2013 and one on January 7, 2015. (2 RR and 3 RR.) Both hearings were limited to Defendant-Appellant's complaints concerning the timeliness of Plaintiff-Appellee's Chapter 74 expert report. (2 RR and 3 RR.) On January 8, 2015, the trial court denied Defendant-Appellant's second motion to dismiss based on the alleged untimely service of the report. (CR 401.) This appeal followed.

## STANDARDS OF REVIEW

**I.     The Trial Court's Denial of Defendant-Appellant's Second Motion to Dismiss is Reviewed for an Abuse of Discretion.**

The trial court's denial of a motion to dismiss for failure to timely file a section 74.351(a) expert report is reviewed for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (applying abuse of discretion standard in reviewing trial court's decision regarding the dismissal of a claim under Chapter 74); *McQuade v. Berry*, No. 02-12-00099-CV, 2012 WL 6049012, at *2 (Tex. App.—Fort Worth 2012, no pet.) (affirming the trial court's denial of a motion to dismiss based on timeliness challenges after reviewing the decision for an abuse of discretion). Under this standard, an appellate court will not reverse a trial court's judgment simply because the appellate court would have decided the matter differently. To the contrary, the Court will only reverse the judgment if the trial court "acted without any reference to any guiding rules or principles." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). This deferential standard of review applies even to "the trial court's resolution of the historical facts from conflicting affidavits." *Manzi v. State*, 88 S.W.3d 240, 244 (Tex. Crim. App. 2002) (en banc); *see Anderson v. City of Bessemar*, 470 U.S. 546, 574-75 (1985) ("[T]he parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is a correct one; requiring them to persuade three more judges at the appellate level is requiring too much.").

To the extent resolution of the issues requires interpreting statutes, the court applies a *de novo* standard of review. *See Pallares v. Magic Valley Elec. Coop.*, 267 S.W.3d 67, 69-70 (Tex. App.—Corpus Christi 2008, pet. denied) (internal citations omitted).

## II. The Trial Court's Findings of Fact and Conclusions of Law Are Reviewed for Factual and Legal Sufficiency of the Evidence.

Courts of appeals review findings of fact for both legal and factual sufficiency. *See BMC Software Belgium, N.V. v. Marchland*, 82 S.W.3d 789, 794 (Tex. 2001). Conclusions of law are reviewed *de novo*. *McAllen Police Officers Union v. Tamez*, 81 S.W.3d 401, 404 (Tex. App.—Corpus Christi 2002, pet. dism'd). The appellate court will only set aside a factual finding if the evidence supporting the finding is contrary to the overwhelming weight of the evidence. *See Cameron Cnty Drainage Dist. No. 5 v. Gonzales*, 69 S.W.3d 820, 825 (Tex. App.—Corpus Christi 2002, no pet.) (citing *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex. 1993)). The appellate court will not substitute its judgment for that of the trial court in evaluating factual matters determined by the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

## SUMMARY OF THE ARGUMENT

### I.

The trial court correctly denied Defendant-Appellant's second motion to dismiss. The 120-day deadline for serving Dr. Mathew Alexander with an expert report under Chapter 74 was triggered by Plaintiff-Appellee's First Amended Petition, which was the first filing where Dr. Mathew Alexander was named as a party and where claims were asserted against him. Plaintiff-Appellee therefore had 120-days from June 27, 2012—the date that the First Amended Petition was filed—to serve his expert report on Dr. Mathew Alexander. Because Plaintiff-Appellee served his expert report on October 17, 2012—well within that 120-days—the trial court's dismissal of Defendant-Appellant's second motion to dismiss was proper.

### II.

The evidence is more than sufficient to support the trial court's conclusion that Dr. Mathew Alexander was not a named party to the proceeding until Plaintiff-Appellee's First Amended Petition. Moreover, the legal conclusions that the trial court drew from the facts of the case were correct and supported by ample case law. Thus, the trial court's findings of fact numbers 3, 4, 5, and 8 and conclusion of law number 18 are legally and factually sufficient.

## ARGUMENT

### I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S SECOND MOTION TO DISMISS.

At the time that this lawsuit was filed and amended, Chapter 74 of the Texas Civil Practice & Remedies Code provided that a claimant asserting a health care liability claim must, within 120 days following the filing of the original petition, serve an expert report and curriculum vitae for each physician or health care provider against whom the claim is asserted. Tex. Civ. Prac. & Rem. Code § 74.351(a) (Vernon 2011).[1] If a claimant fails to serve an expert report on the defendant physician or health care provider, then, on the motion of the affected physician or health care provider, the trial court shall dismiss the claimant's claim. Tex. Civ. Prac. & Rem. Code § 74.351(b) (Vernon 2011). On appeal, Defendant-Appellant does not challenge the sufficiency of Plaintiff-Appellee's expert report; instead, Defendant-Appellant challenges the timeliness of Plaintiff-Appellee's service of his expert report. Defendant-Appellant's attack on the timeliness of Plaintiff-Appellee's expert report is not sustainable as a matter of law because he timely served Dr. Mathew Alexander after suing him.

---

[1] In 2013, the Legislature amended section 74.351(a) to require service of the expert report within 120 days of the defendant's answer. *See* Act of May 24, 2013, 83rd Leg., ch. 870 (H.B. 658), § 2, eff. Sept. 1, 2013. The original petition was filed in June 2012 and amended later that same month and is thus governed by the prior version of the statute, which required service of the expert report within 120 days following the filing of the original petition. All references to Chapter 74 contained herein refer to the 2011 version of the statute applicable to this suit, unless otherwise noted.

9

**A.** **Plaintiff-Appellee Timely Served an Expert Report on Defendant-Appellant Mathew Alexander within 120 Days of Filing His Pleading Naming Defendant-Appellant Mathew Alexander as a Party.**

**1.** *The 120-day deadline to serve an expert report runs from date that the Plaintiff first asserted a health care liability claim against the Defendant.*

While Texas Civil Practice & Remedies Code Section 74.351(a) mandates that a claimant pursuing a health care liability claim serve an expert report on each defendant no later than the 120th day after filing the "original" petition, the operative pleading for purposes of triggering the 120-day expert report deadline is the pleading that first asserts a health care liability claim against the defendant. *See Padre Behavioral Hlth Sys., LLC v. Chaney*, 310 S.W.3d 78 (Tex. App.—Corpus Christi 2010, no pet.) (holding that the statutory 120-day period to file a Chapter 74 expert report was triggered by the first-filed petition asserting a claim against the defendant physician or health care provider). Virtually every appellate court—including this Court—that has considered the issue has reached the same conclusion. *See id.*; *see also Hayes v. Carroll*, 314 S.W.3d 494, 500 (Tex. App.—Austin 2010, pet. aff'd); *Daybreak Comm. Servs., Inc. v. Cartrite*, 320 S.W.3d 865, 871 (Tex. App.—Amarillo 2010, no pet.); *Kingswood Specialty Hosp., Ltd. v. Barley*, 328 S.W.3d 611, 613 (Tex. App.—Houston [14th Dist.] 2010, pet. aff'd); *Stroud v. Grubb*, 328 S.W.3d 561 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Osonma v. Smith*, No. 04-08-00841-CV, 2009 WL 1900404, at *1-3 (Tex. App.—San Antonio July 1, 2009, pet. denied) (mem. op.).

For example, in *Padre Behavioral Health Systems, LLC v. Chaney*, this Court held that the 120-day period for a patient's estate to file an expert report in a medical malpractice action was triggered by the first-filed petition naming the defendant physician or health care provider. *Chaney*, 310 S.W.3d at 85. To reach that conclusion, this Court examined the legislative history behind section 74.351(a) and noted that to hold otherwise, "would lead to absurd results: after more than 120 days after filing a lawsuit, even if the statute of limitations period had not expired, a plaintiff could never add another physician or health care provider as a defendant because she would never be able to timely serve an expert report on such a defendant." *Chaney*, 310 S.W.3d at 85 (*citing Osonma*, 2009 WL 1099404, at *4).

Similarly, in *Hayes v. Carroll,* 314 S.W.3d 494, 500 (Tex. App.—Austin 2010, no pet.), the Austin Court of Appeals held that a patient's amended petition adding physicians and nurses as defendants—rather than the initial petition only naming a hospital as a defendant—triggered the 120-day period during which the patient was required to serve the expert report on the physicians and nurses. The *Hayes* Court reasoned that "[i]f a defendant has not yet been added to a case, there has yet to be a lawsuit filed against that defendant." *Id.* at 500. The San Antonio Court of Appeals has likewise opined that "[s]ection 74.351(a)'s requirement that a plaintiff serve an expert report explaining each defendant physician's or health care provider's liability within 120 days from the filing of the original petition does not necessarily refer to the first-filed petition in the lawsuit; it refers to the first filed petition naming that

11

defendant physician or health care provider as a party to the lawsuit." *Osonma,* 2009 WL 1900404, at *2.

As the trial court properly found, here, the first pleading to assert claims against Defendant-Appellant Mathew Alexander was the First Amended Petition, which was filed on June 27, 2012. (Supp. CR 17.) That fact is evident from the face of the pleadings themselves.[2] Specifically, Plaintiff's Original Petition did not name Dr. Mathew Alexander in the style of the case, CR 7, and, critically, did not assert any causes of action against Dr. Mathew Alexander. CR 11-19. It was not until Plaintiff's First Amended Petition, which was filed on June 27, 2012, that Plaintiff-Appellee named Dr. Mathew Alexander as a party in the style of the case and first asserted causes of action against him. CR. 27-34. Because there were no causes of action alleged against Dr. Mathew Alexander until June 27, 2012, Plaintiff-Appellee's expert report was not due until October 25, 2012. Plaintiff-Appellee's service of the expert report on Dr. Mathew Alexander on October 17, 2012 was therefore timely. *See* Supp. CR 18; *see also* Supp. CR 20 ("Plaintiff-Appellee served His Chapter 74 expert report on Defendant Dr. Mathew Alexander within the 120-day deadline mandated by Texas Civil Practice and Remedies Code Section 74.351(a) because the operative

---

[2] Defendant-Appellant refers the Court to extrinsic evidence outside of the pleadings, such as Plaintiff-Appellee's pre-suit notice letter, to support its claim that Plaintiff-Appellee intended to name Dr. Mathew Alexander as a party in the Original Petition. Defendant-Appellant's Brief at 19. This Court does not need to look beyond the pleadings themselves to see that there were no healthcare liability claims asserted against Dr. Mathew Alexander until Plaintiff's First Amended Petition. *Cf. Mark v. St. Luke's Episcopal Hosp.,* 52 Tex. Sup. J 1194 2009 Tex. LEXIS 636 at *12 (Tex. Aug. 28 2009) (focusing on specific allegation in claimant's original petition to determine whether claims were "health care liability claims" for which 120-day expert was required).

pleading asserting a cause of action against Dr. Mathew Alexander was Plaintiff-Appellee's First Amended Petition.").

2. <u>*Zanchi v. Lane, 408 S.W.3d 373 (Tex. 2013) is inapposite and, if anything, supports Plaintiff-Appellee's argument.*</u>

Defendant-Appellant relies on *Zanchi v. Lane*, 408 S.W.3d 373 (Tex. 2013) for the proposition that Dr. Mathew Alexander was named as a "party" to the suit in the Original Petition. Defendant-Appellant's Brief at 18. Such reliance, however, is misplaced. In *Zanchi v. Lane*, the plaintiff, a representative of the decedent's estate, sued an anesthesiologist on behalf of the estate for the decedent's death after undergoing a splenectomy. *Zanchi*, 308 S.W.3d at 376. In the original petition, the plaintiff named the anesthesiologist, Zanchi, as a defendant and alleged that Zanchi's medical negligence resulted in the decedent's death. *Id.* Although Zanchi was not served with process until five months after the original petition was filed, the plaintiff mailed his expert report and curriculum vitae to Zanchi at five different locations within 120 days of filing the original petition. *Id.* Zanchi moved to dismiss, arguing that he did not become a "party" to the lawsuit until he was served with process and that the plaintiff therefore failed to serve him within 120 days of filing suit. *Id.* at 377. The Supreme Court of Texas disagreed, determining that "in the context of the TMLA [Texas Medical Liability Act], the term 'party' means one named in a lawsuit and that service of the expert report on Zanchi before he was served with process satisfied the TMLA's expert-report requirement." *Id.*

13

The Texas Supreme Court's opinion in *Zanchi* was limited to whether a defendant could evade a plaintiff's proper service of an expert report within 120 days of filing suit by claiming he was not a "party" to the lawsuit before he was served with process. *See id.* The *Zanchi* Court never addressed—either directly or indirectly—whether a plaintiff's original petition triggered the 120-day deadline for a later-named defendant who was *not named as a party* in the original petition. *See id.* As discussed above, that question has been squarely addressed and answered with a resounding "No" by appellate courts throughout Texas. *See supra* Part I.A.1; *see also Chaney*, 310 S.W.3d at 78; *Hayes,* 314 S.W.3d at 500; *Cartrite*, 320 S.W.3d at 871; *Barley*, 328 S.W.3d at 613; *Stroud*, 328 S.W.3d at 561. If *Zanchi* applies at all, it only serves to support the trial court's denial of Defendant-Appellant's motion to dismiss because Dr. Mathew Alexander was not "named in a lawsuit" until the First Amended Petition was filed. *See Zanchi*, 308 S.W.3d at 377; *see also* (CR 7, 11-19.)

### 3. *The common law concept of misnomer does not apply.*

Defendant-Appellant contends that Plaintiff-Appellee's naming of Dr. Lamar Alexander, rather than Dr. Mathew Alexander, in his Original Petition is a case of "misnomer" not "misidentification" and that "Appellee intended to sue Dr. Mathew Alexander, even if he misnamed him in parts of the Original Petition." Defendant-Appellant's Brief at 20. The only authority Defendant-Appellant cites to support this contention either (1) applies in the context of tolling a statute of limitations, or (2) does not support its position.

14

In support of its "misnomer/misidentification" argument, Defendant-Appellant cites cases discussing and applying these doctrines in the context of determining whether a statute of limitations is tolled. *See, e.g.,* Defendant-Appellant's Brief at 19 (citing *Buchinal v. PJ Trailers-Seminole Mgmt. Co.*, 372 S.W.3d 200, 214 (Tex. App.—Texarkana 2012, no pet.); *Id.* at 21 (citing *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 326 (Tex. 2009). As a general rule, a plaintiff may use the doctrine of "misnomer" to avoid limitations by arguing that an amended petition "relates back" to the original petition. *See Buchinal*, 372 S.W.3d at 214. Applying the doctrine of misnomer in such instances ensures that "the decisions of the courts of appeals turn on substance rather than [a] procedural technicality." *City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 418 (Tex. 1992). In this regard, the theory of "misnomer" is used as a shield to protect a plaintiff's cause of action.

Here, Defendant-Appellant attempts to turn this "shield" into a "sword" by arguing that, due to a misnomer, Plaintiff's First Amended Petition relates back to his Original Petition and thereby starts the 120-day clock for serving an expert's report. Yet, no authority supports Defendant-Appellant's use of the concept of "misnomer"—which was intended to shield plaintiffs from dismissal when a statute of limitations has run—as a sword to compel dismissal in a health care liability claim when a defendant was not named in the original petition.

The cases on which Defendant-Appellant relies are further distinguishable because the misnamed party was actually served with the original petition. *See In re*

*Greater Houston Orthopaedic*, 295 S.W.2d at 325 ("Courts are flexible in these cases because the party is intended to be sued has been served and put on notice that it is the intended defendant."). In fact, in one of the cases cited by Defendant-Appellant, *Union Pacific Corp. v. Legg*, 49 S.W.3d 72, 78 (Tex. App.-Austin 2001, no pet.), the court emphasized that "most important of all, . . . the *intended defendant [must be] actually served with citation*" for the concept of misnomer to apply. (Emphasis in original). Here, there is no dispute that Dr. Mathew Alexander was never served with the Original Petition. (CR 251.) The reason for that is simple. Dr. Mathew Alexander was never named as party defendant in the Original Petition—his name did not appear in the style of the case, nor were there any causes of action alleged against him. That is also why *Lone Star HMA, L.P. v. Wheeler*, 292 S.W.3d 812, 816 (Tex. App.—Dallas 2009, no pet.) is distinguishable. The *Wheeler* Court refused to apply the doctrine of misidentification to the service of an expert report when a plaintiff originally sued "Mesquite Community Hospital a/k/a Woman's Health Hospital at Dallas Regional Medical Center" where the hospital's name was "Mesquite Community Hospital a/k/a/ Lone Star HMA, L.P. d/b/a Women's Hospital at Dallas Regional Medical Center." There, the Dallas Court of Appeals specifically noted that all petitions listed the defendants "in their common or assumed names." *Id.* at 814.

Unlike *Wheeler*, Dr. Mathew Alexander was not named until the First Amended Petition. This case is therefore more akin to *Daybreak Community Services, Inc. v. Cartrite*, 320 S.W.3d 865, (Tex. App.—Amarillo 2010, no pet.) and *Stroud v. Grubb*, 328 S.W.3d

16

561 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). In the former, the plaintiff argued that her misidentification of a health care provider entitled her to a new 120-day expert report deadline under section 74.351(a). *Cartrite*, 320 S.W.3d at 866. The trial court found that the plaintiff's misidentification of the defendant entitled her to a new 120-day deadline. *Id.* The court of appeals agreed and affirmed the trial court's denial of the defendant's motion to dismiss. *Id.* In the latter, the Houston Court of Appeals distinguished *Wheeler*, asserting that the defendant in that case was not named until the fourth amended petition and the 120-day deadline thus did not start to run until that pleading was filed. *Grubb*, 328 S.W.3d at 565 n.1. Like the defendants in *Cartrite* and *Stroud*, Dr. Mathew Alexander was not named as a party until Plaintiff-Appellee amended his petition. The amended petition triggered the start of the 120-day deadline to serve Plaintiff-Appellee's expert report and his report was therefore timely.

**B.     Plaintiff-Appellee's Service of His Expert Report was Timely Even Assuming the 120-Day Deadline was Triggered by the Filing of Plaintiff's Original Petition.**

Even if the Court were to accept the argument that the operative date for beginning the 120-day period was June 19th, 2012—the date that Plaintiff's Original Petition naming "Lamar Alexander" as opposed to "Mathew Alexander," was filed— Plaintiff-Appellee still served the expert report on a timely basis. Chapter 74 of the Texas Civil Practice and Remedies Code requires a claimant to "serve" the expert

report "on each party or the party's attorney," but does not define *how* a plaintiff must serve an expert report on a defendant. Tex. Civ. Prac. & Rem. Code § 74.351(a).

In *Stockton v. Offenbach*, 336 S.W.3d 610, 615-16 (Tex. 2011), the Supreme Court of Texas examined the expert report service requirements under Chapter 74. In *Stockton*, the plaintiff served his report on the doctor four months late as he had difficulty locating the doctor. 336 S.W.3d at 616. The plaintiff argued that if the service requirements in Chapter 74 incorporated the requirements of Texas Rule of Civil Procedure 21a, they should also incorporate the due diligence concepts that have attached to that rule. *Id.* at 615. The defendant responded that an extension for the service of an expert report is appropriate only under two circumstances, "by written agreement" or by "court order to cure deficiencies." *Id.* at 616. In response, the Supreme Court of Texas determined that the term "served" is not defined under Chapter 74, but that its meaning under common law includes the notion of due diligence. *Id.* The *Stockton* Court ultimately found that the record in that case established a lack of due diligence as a matter of law because the plaintiff failed to serve the expert report for four months, but it impliedly suggested that it would allow an exception to the strict 120-day deadline under different circumstances. *Id.* at 616-17.

In *Tenet Hospitals Limited v. Rivera*, 445 S.W.3d 698, 704-05 (Tex. 2014), the Supreme Court of Texas reviewed several decisions on the doctrine of due diligence. Specifically, the Court noted that it had previously ruled that delays of four months

18

(*Stockton*), seventeen months (*Shah v. Moss*, 67 S.W.3d 836, 847 (Tex. 2001)), and twenty-two months (*Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 785 (Tex. 2007)), revealed a lack of due diligence. Whatever due diligence is from a time standpoint, it would certainly seem that a delay of less than two hours would still be considered within the realm of due diligence.

Plaintiff-Appellee acknowledges Defendant-Appellant's reliance on *Nexion Health at Beechnut, Inc. v. Paul*, 335 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2011, no pet.) as requiring this Court to strictly apply Rule 21a to Chapter 74's expert report service requirement. However, the plaintiffs in *Nexion Health* never raised the due diligence argument. Additionally, the *Nexion Health* decision was filed *prior to* the Supreme Court of Texas's opinion in *Stockton*. *Compare Nexion Health*, 335 S.W.3d at 716 (opinion filed on Feb. 10, 2011) *with Stockton*, 336 S.W.3d at 610 (opinion filed Feb. 25, 2011). Lastly, applying the due diligence exception is consistent with the legislative intent in amending Chapter 74 and with the Texas Rules of Civil Procedure.

First, applying the due diligence exception in this case would not frustrate the stated purpose of the Legislature's amendments to Chapter 74. The amendments were designed to "reduce [health care liability] claims, but to do so in a manner that will not unduly restrict a claimant's rights *any more than necessary to deal with the health care crisis.*" *Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007) (emphasis added). Second, as stated in Texas Rule of Civil Procedure 1:

19

> The proper objective of the rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants . . . to the end that this objective may be attained with as great expedition and dispatch and the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.

The just, equitable, and fair result would be to apply the due diligence concepts engrafted into Rule 21a with regard to Plaintiff-Appellee's service of his expert report on Dr. Mathew Alexander.

## II.   THE EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW.

The Defendant-Appellant argues in passing "[t]he trial court erroneously concluded that Appellee's expert report was timely served; findings of fact numbers 3, 4, 5, and 8 and conclusion of law number 18 are supported by legally and factually insufficient evidence, and conclusion of law number 18 is legally erroneous." Defendant-Appellants Brief at 25. This is simply not so. The trial court correctly concluded, based upon its review of the pleadings filed in the matter and its review of the law that Dr. Mathew Alexander was not a named party to Plaintiff-Appellee's Original Petition.

Notably, a finding of fact by the trial court, not assailed on appeal, is entitled to the same deference as a jury's finding and is binding on the reviewing court, provided the finding is authorized by law. *See, e.g., Puri v. Mansukhani*, 973 S.W.2d 701 (Tex. App.—Houston [14th Dist.] 1998). As explained in great detail above, the trial court's legal conclusion is legally sound. *See supra* Part X. The trial court's factual

conclusions, based upon the judicial admissions of the parties in the operative pleadings, are not against the great weight and preponderance of the evidence as to be manifestly unjust. *See Puri*, 973 S.W.2d at 701; *see also Schindler v. Schindler*, 119 S.W.3d 923, 929 (Tex. App.—Dallas 2003, pet. denied) ("[W]e will sustain the findings if there is sufficient evidence to support them, and we will review the legal conclusions drawn from the facts found to determine their correctness.").

Specifically, Mr. Lomas did not name Dr. Mathew Alexander, Individually and as President of South Texas Brain and Spine Center ("Defendant-Appellant") as a party to the suit in his Original Petition. Plaintiff-Appellee did not assert a cause of action against Dr. Mathew Alexander in his Original Petition nor did Plaintiff-Appellee list Dr. Mathew Alexander as a defendant in the style of the case for his Original petition. (Supp. CR 16.) Mr. Lomas' First Amended Petition, filed on June 27, 2012, is the first to have alleged facts and causes of action against Dr. Mathew Alexander and list him as a defendant in the style of the case. (Supp. CR 17.) Dr. Mathew Alexander was never served with the Original Petition, he was served only with the First Amended Petition where he was named as a party. (Supp. CR 17.) The evidence therefore supports the trial court's conclusion that "June 27, 2012 was the first time Plaintiff sued and brought a cause of action against Defendant Mathew Alexander." (Supp. CR 17.)

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellee respectfully requests that this Court affirm the trial court's decision to deny Defendant-Appellant's second motion to dismiss.

Respectfully Submitted,

/s/Marion M. Reilly
Robert C. Hilliard
State Bar No. 09677700
bobh@hmglawfirm.com
Catherine D. Tobin
State Bar No. 24013642
catherine@hmglawfirm.com
John B. Martinez
State Bar No. 24010212
john@hmglawfirm.com
T. Christopher Pinedo
State Bar No. 00788935
cpinedo@hmglawfirm.com
Marion M. Reilly
State Bar No. 24079195
marion@hmglawfirm.com

**HILLIARD MUÑOZ GONZALES LLP**
719 S. Shoreline Boulevard, Suite 500
Corpus Christi, Texas 78401
Telephone No.:  (361) 882-1612
Facsimile No.:   (361) 882-3015
**ATTORNEYS FOR PLAINTIFF-APPELLEE**

## RULE 9.4(I) CERTIFICATION

In compliance with the Texas Rules of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 5,524.

/s/ Marion M. Reilly
Marion M. Reilly

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Plaintiff-Appellee's Brief was served via the electronic filing system on the following:

Diana L. Faust
Cooper & Scully, P.C.
900 Jackson St. #100
Dallas, TX 75202

Richard Wager
Patterson and Wagner
7550 I-10 West, Suite 500
San Antonio, TX 78229

Mr. Richard C. Woolsey
Woolsey and Associates
555 N. Carancahua, Suite 1101
Corpus Christi, Texas 78401

/s/ Marion M. Reilly
Marion M. Reilly